Good morning everybody. We'll be hearing four cases this morning and we will start with Oglesbee v. Glock, which is number 23-5134. Council, you may proceed. Thank you, Your Honors. I want to first start talking about the Glock design as it relates to the safeties inside the firearm. Glock states that they have three independent safeties. There is a trigger safety, there's a firing pin safety, and then there's a ledge or a slot that they call a drop safety. The reason I want to talk about this is the sequencing of and design of how these are removed and make the gun an actionable gun where it will fire are important to the warnings and instructions in this case. All three safeties are purported to be independent but all rely on each other working together. This is because if the trigger safety is deactivated, then it puts into motion or can put into motion during a drop-fire event where the other two safeties do not provide the protection they purport that it does. As the trigger moves rearward after that safety is either never activated or has been deactivated by the user, then that trigger moves rearward causing the firing pin safety to move up with an arm that is connected to the trigger, and then the trigger is also providing a force that propels itself rearward and will then hit a ramp and fall back and outside of the drop safety causing the gun to fire. And that's important because if someone does think that they've designed a gun that has three independent safeties and it doesn't, and they're telling the public that it has three independent safeties, they're leading they're setting the expectations of the public. And so one of the one of the expectations of the public for this unreasonable design is that they have three independent safeties to prevent drop fires and inadvertent discharges in this firearm. Now the sequencing... In this case though, whether they had one, two, or three, all of the Glock original safety features were removed and replaced with a different manufacturer's. That is not true. The the components that were part of the safeties were not removed. The drop safety ledge is still in there. The trigger safety is in there. What was changed were three springs in a connector that are not identified as the safety features. One, I will give you the firing pin safety, which I think had minimal impact on this event. It has a spring right above it. But that's not the key point. The key point is the firing pin spring was changed and the trigger spring was changed. These are the springs that people believe are related to the trigger pull and the firing mechanism of the gun. They aren't springs that people understand are part of the safety features being driven into their active state. Well, I think you're heading in this direction, but why doesn't the warning cover this? Well, the warning is very generic. The warning just says do not... Well, I'm probably generic because there's so many things that can be changed. I don't believe... Do they need to have a warning on every, on all three of the examples you just gave us? I don't think they need to have a warning on all three examples. What they need to have a warning on are known examples and foreseeable modifications. The warning says that parts are not altered or modified. Right? Strict adherence to safety instructions, other instructions contained in this manual, based on this premise that parts are not altered or modified. Everything you just mentioned could be altered or modified. Anything on the firearm could be altered or modified. And that's the point, isn't it? Why isn't the warning adequate? My point is that that's not a salient enough warning to provide the user what they know could modify it. You've got a case that supports that position. Roswell talks about that. What's your closest analogous Oklahoma case that would support your position that the warning wasn't adequate? Well, Smith v. Gibson talks about they had a warning related to the adhesive, and they found it was enough of a jury question because the warning wasn't sufficient to warn the user of what to not do. And it says if the warnings are unclear or inadequate to apprise the consumer of the inherent or latent danger, the product may be defective. Is that case about the specificity of the warning that's required? That was one of the reasons it was appealed, yes. Well, and that was because they didn't talk about a room with no windows, right? Correct. They didn't warn against using the product in a room without windows. But they had other warnings on there that they thought were related to that. That is what's happening in this case. When I think of a warning, I think of it similar to, like, informed consent when you go in for a medical procedure. If all you're told is if you have inner surgery, you may die, that is not an informed consent. That is what this Glock warning is, is a limited warning saying do not modify anything. There were some other modifications. But that's not a limited warning, that's a very broad warning. Do not change the parts. Do not alter or modify our parts. And if you do, we don't warrant this. Well, Kirkland doesn't say, isn't about just a true warranty, it's about whether a product is defective and whether the warning is defective. It's not about whether we'll switch out your parts at a later date. That's what that warning is saying. We won't warrant this. What should this warning have said to satisfy your view of what the law requires? This warning should have said that if you increase the firing pin or the trigger safety, if you increase the trigger spring strength and decrease the firing pin strength, that could cause the gun to not activate and reset its trigger safety. That is a very simple warning that puts them on notice. They have a warning on a different issue on page 21 of their instruction manual. Well, that's a very specific warning to the facts of this case. But I think as Judge Matheson said, there are a whole lot of ways to modify this gun with aftermarket parts. And rather than trying to think of every possible way a buyer might modify the gun, they're saying, we warrant it if you keep it as we've made it. But once you start trading out parts and modifying it, we don't warrant it. Under Oklahoma law, that is not the standard. The standard... In the case, you're still relying on the Smith, what's the name of that case, the... Not Smith. Smith. No, that's just about the warning. But foreseeable modifications are actionable. Soppity v. Yazoo Manufacturing and Ford Motor Company. Yeah, and they did foresee modifications and said, don't do it. Because if you make modifications, if you change out these parts, we won't warrant it. And what you're saying is they have to anticipate every possible way that someone might modify this gun and make a specific warning as to each possible modification. Is that what you're saying? I'm not saying they have to anticipate every possible modification and warrant on every possible modification. But generally, when you look at these spring manufacturers, what they are modifying is the trigger pull, which includes these two springs. And the second part of the defective condition design that the alternative design provides is a sequencing of when this trigger safety gets put into place. As it moves forward, it first resets the trigger, which means the gun can be fired again, and then it has to move forward again to reset the safety. One of the items that we are talking about is that should be either instantaneous at the same time, or the safety should be activated before that trigger reset occurs. That's what the alternative design does. Why isn't your argument more relevant to the second element of a product's liability claim? In other words, you have to show that the product caused the injury. I don't think there's dispute about that. The defect existed when the product left the manufacturer's possession. And as I understand it, the parties agree that it's reasonably foreseeable that the Glock could be modified with non-Glock parts, which is exactly what we're talking about here. And then we get to the warning. But it seems to me you're talking about this foreseeability issue, which seems to be step two. That really isn't in dispute, is it? Well, that's why I talked about the sequencing. The sequencing is the gun leaving it in their possession, leaving it in its design. I'm just asking you to match your argument to the elements of the claim. And what I'm asking you is whether your argument fits a little bit more with number two than number three. I think it fits with both, but if you feel that number two is stronger, we can discuss number two more. Well, no. I don't think the parties are disputing number two. And that's my point. It was foreseeable that these changes could be made. There's a warning not to do changes. What's the complication? The warning isn't sufficient. It doesn't tell the user what they shouldn't be changing. For example, Mr. Oglesby stippled the grip, which is where he used a soldering iron to add abrasive to where it's easier to grip. He changed out a back plate. Those modifications do not change the safety of the gun, which is why you should have specific warnings that will change the safeties of the gun. Well, this warning ties it directly to that the Glock pistols have several internal design features and mechanical safeties designed to prevent an accidental discharge should the pistol be dropped. So it's telling you exactly what the danger is if you mess with the gun. And then it says we're only warranting the safe function of the pistol based on the premise that parts are not altered or modified. Then I would ask why do they sanction events where Glock users are told to come to a Glock event within an unlimited competition where they are allowed to modify their gun when they know it's unsafe? Well, that's not in the record that I have. Yes, it is. It's in the back of my appendix where we talk about it's unlimited warning. What does it have to do with the warning? It has to do with the warning. They want users to ignore the warning. Well, now that's a different argument, isn't it? I mean, the warning is adequate or it's not. I don't think it's adequate. I understand that. But now you just said they're trying to get users to ignore the warning. They know it's happening. And so if they know it's happening and they know people are putting in these springs. They know it's happening and that's element two. They know it's happening so at element three they provide a warning. And I don't think the warning is adequate. You have to provide specificity. It doesn't have to be granular. You don't have to say the exact specification. Well, it sounds like it might have to be granular. Look, doesn't the record show that there's just I don't know how many different types of non-Glock parts out there and many different ways to alter the firearm? Are you saying that the Glock needs to anticipate every single one of those and put them all into one kind of omnibus global specific warning? Is that what would have to happen? No. What I'm saying is these aftermarks. Because there's your case and you want a warning tailored to exactly what happened here. But the adequacy of the warning has to cover the foreseeable risks. And why wouldn't this do that? Because it doesn't talk about what specific parts are related to their actual safety. It just says the entire gun cannot be modified. You don't lay out in your brief, do you, what an adequate warning would be? I don't put a specific language, no. I'll reserve my time for the rebuttal. Good morning, counsel. Thank you for having me. If it's okay with the court, I'd like to address the questions in order that they were asked of counsel. I would start with Judge McHugh. Yes, Your Honor, you're absolutely right. The safe action system, this revolutionary system, involves all of the parts that are at issue in this case. The firearm pin spring, the firearm pin safety spring, the trigger spring, the connector are all part of the safe action system. They're what makes the safe action system work. Judge Matheson, you had a question about generic and a generic warning. You're absolutely right. There are so many different things that could be changed here. The record shows there are hundreds of manufacturers out there that make aftermarket parts for a Glock pistol. Why? Because it's so popular. It's proven. Sixty percent of the law enforcement in this country use it. It's used by the court offices here, national, state, local law enforcement agencies. The record shows these guns do not drop fire. So you're right, Your Honor. That's why we have to do a blanket warning. What is the best case, you ask counsel. I'm going to tell you the best case is the Braswell case. From this court is on all fours with all of the issues here. Oklahoma law does not require granular specificity for their warnings. Judge Rossman, what should the warning say? You asked that question. And counsel said, well, if you increase this and you decrease this and you increase this, you may have a problem. But what about the other company making the aftermarket parts and they do it in reverse? Could that be a problem if you increase it or decrease it? If you increase it or decrease that? And with all the different parts, how could you have some type of warning like that? And it goes further. It's not only don't make modifications. Don't open up that part of the firearm. As counsel stated, his client removed the slide cover plate of the slide. You're not even supposed to do that. Why? Because inside is the inside, the guts, which is where the firing pin is, where the firing pin safety spring is, the parts at issue here. Glock says don't do it. Don't go in there. How should we be thinking about if the record supports your adversary's position that Glock knows that there are modifications happening all the time? How does that affect our thinking about whether the blanket warning that you have is sufficient? But the Ford F-150 is the most popular truck in the country. Modifications are made to it every day. Glock is the most popular firearm in the country. Modifications are made to it. Yes, they know that. That's not an issue here. Foreseeability is not an issue here. Judge Frisell went to the third problem. Is it unreasonably dangerous? Because he found, and this court continually finds that Oklahoma law on foreseeability may not be, you know, they may not have tackled it enough for us to be able to pass on it. So we look at unreasonably dangerous. And is this firearm unreasonably dangerous? Just like in Braswell, was the product there unreasonably dangerous? So we keep foreseeability out of it, and we go to that. We go to the consumer expectation test. We go to the case law for Braswell. You can't, you know, post-sale modifications are not enough to bring liability upon a manufacturer. An otherwise unsafe product is not made unreasonably dangerous if the manufacturer fails to prevent the replacement of a part with a substandard aftermarket. Counsel, can I just jump in here? Because I had a question related to that. So there's granular on one side, and then there's general on the other, and there's got to be a lot in between. And if this case were presented to a jury and they needed guidance on the criteria of what would be an adequate warning based on the case law, how would you articulate that? I would articulate it like this court did in Braswell, and I think those warnings weren't as strong as the warnings that we had before the court. And it's not just the warnings, don't do it, don't modify the parts. Glock goes so much further, because I'm not going to read all the warnings. The court has it. But they intentionally, in their manuals, in their guides, they say, don't open the stamp, the darn thing up. Excuse me, apologies. Don't disassemble it in detail. That's a warning. If you go beyond field stripping, three parts, go to a Glock armor up, don't do it. There's step-by-step instructions, and this is so important, in the manual to determine whether or not the gun is functioning. Sorry, you're now at testing instructions. I'm sorry? Testing instructions, is that what you're talking about now? Yeah, absolutely. It all goes in with the warnings. So if they had done number 11 of the testing instructions, would this problem have been identified? Your Honor, you can see it with the naked eye. There's a firearm, there's a trigger, and there's a trigger safety, and it sticks out. Well, I mean, the instruction 11 and 10 talk about forward, and that doesn't seem to be so clear. If we know that 44% threshold is important to the pistol's safety, I mean, how do you why isn't it unclear what forward is supposed to mean? Your Honor, it's not. Why not? Because forward is forward and rearward is rearward. But it's distilled by these percentages, isn't that? What percentage? I'm sorry, Your Honor. Well, that's the argument that your adversary makes, that it's unclear what forward really means. He's making an argument. He's trying to make an argument that the pistol is defective in its present state without aftermarket parts, which is not before the court. All the evidence shows that it's not defective, as designed and manufactured by the manufacturer. What he's trying to say is if you put a different type of trigger in there, maybe perhaps you can see. Well, no, I think what he's trying to say is it's hard to follow the instructions to the letter because it's unclear what forward means. You don't have to follow it to the letter. That's not the argument. The argument is saying you have to follow it to the letter. You can follow any one of these ten different warnings, and this thing would never happen. But I think, and I don't think it's a jury question. I thought that you had to follow all the steps. You don't have to follow all the steps? You can follow any one of them. If he checked the trigger safety, number 10, he would have seen that the trigger safety wasn't working. If whoever made the modifications read the warnings, they wouldn't have made the modifications. If they read the warnings not to open the pistol, they wouldn't have opened the pistol. If any one of these various things were followed, this never would have happened. So we can't just look granularly at a warning and say, oh, that may not be, and I think it's very clear. I don't think anyone in the record has made a good argument that any of this is not clear. It's in plain, simple English. And most importantly, Mr. Ogilvie told me under oath, he looked at me and he said, I know what that means. He's been around guns his whole life. He was in the military. He made changes to guns. He had guns. He knew what that meant. That's in the deposition. That's in the deposition. I apologize. I don't know. It's in the record, but he was a firearms person. He knew a lot about firearms. He worked in a shop that sold these parts. He made changes to the back of the pistol that you're not supposed to do, and he did it anyway. He stippled the grip so that he could have better combat control. He knows this gun. He knows it well. What about this argument, the Ogilvie's make, that Glock should have, and I'm just going to quote, adapted the safety mechanisms to remain effective despite the modifications? What's your response to that argument? Hundreds of aftermarket part manufacturers, thousands of aftermarket parts, and hundreds of thousands of combinations of parts that could defeat a safety in a firearm. How could this product manufacturer warn of all those hundreds of thousands of changes? And that's just today, Your Honor. What about tomorrow? Let's say they somehow did that, which is impossible. What about the aftermarket part manufacturer tomorrow who comes up with a different way? I'll make this more tension, this less tension. When is the obligation of a product manufacturer end? Or is it they have to continually go out there with hundreds of thousands of combinations and say, look for this, look for this, look for this? That's why you have to do blanket, and it's blanket plus. It's not just blanket. It's blanket plus belts and suspenders and whatever else holds the pants up, because you have your warnings. Don't go into the firearm. Don't make these changes. Here's how to test to see if it happens. It's legion. This record is filled with it. There's no failure to warn here. So I think the public policy considerations are huge with this case. The product was safe for its intended use in the condition that it was sold. Only the post-sale modifications, and everyone agrees, made it unsafe. And the product manufacturer warned against it. If we were to go further and say there's more to do, that would wreak havoc. And I hate opening the floodgates to litigation, but, man, isn't that exactly what would happen here? There's just too many ways. You can make too many changes and modifications to this product or any other product that may come before the court in the future. You know, are we going to get granular as opposed to what Braswell says? We don't have to get granular. We've got to get the message out there. No one can say as a matter of law that message didn't go out there. Any questions? Any further questions? Thank you, counsel. Thank you, Your Honor. I appreciate it. First, I want to point out with regard to the unlimited competition where they are allowed to make modifications, that's at Appendix 880. And that is a Glock-sanctioned competition. The second thing I want to talk about is... Again, what does that have to do with this? They're telling people to make modifications. They're telling you in the actual warning with the purchase of this Glock that if you make those modifications, you run the risk of having a danger of a drop, fire, and we won't warrant it. Then why do they then tell people to come use these guns during competitions where a drop, fire could cause injuries to others? Then the next thing I want to point out is when you talk about 10 and 11, 10 doesn't have you put the force of your finger on it as you're cycling back before you do the actual trigger safety reset test where you pull the sides of the trigger. When you look at the Derek Watkins Glock's expert performs a trigger safety test, he does that. He keeps his finger on it, slowly removes it, and then goes, failure. This is a failure. He identifies it. And that is because he's using what's in the armor's manual, which does tell you to put your finger on there, keep it on there, because that's the real-life forces when you fire a gun. Your hand's going to be on there, and that additional force is going to cause the trigger safety to not move forward. But in this case, there's also a number 11, and there's no allegation that your client went forward and tested under safety check 11, right? He did them as written, and 11 doesn't identify what you're searching for with Ford. Well, I thought there was something in the writing. No, he didn't. There's no allegation that he did 11. There's an allegation that he did 10. Well, 10 is the one regarding the trigger safety reset. Okay, so my question is 11. He testified that he followed all those instructions, yes. And he followed them as written, and that's what they're inadequate, because they're not written correctly. They don't tell you what Ford means. In this situation, the trigger traveled forward, but not forward enough. So it allowed it to reset the trigger and did not allow the safety to reset. So I'm sorry, is your argument that instruction 10 is insufficient? Yes. Okay. So how are we to think about instruction 11, which seems to be supplying what you're looking for for instruction 10? Because it's, again, a sequencing issue. If you tell them to do it correctly and then tell them in 11 to pull the sides of the trigger, then you are telling them how to check that the safety actually reset. So is it your position that it doesn't matter? Let's assume the record is clear, because I think it is, that your client didn't do the safety test 11. Your position is that that doesn't matter because 10 was insufficient? Both are insufficient, and he did both of the tests. Okay. Well, that's not what was argued to the district court. It was argued that he only relied upon the instruction 10 to check the trigger safety, appendix volume 2 at 500. A user is instructed to follow number 10. He also did number 11, which is about the trigger reset, which is about whether the gun will fire again. It's a click in the middle of the gun. And, yes, it talks about moving forward, but it doesn't say anything about ensure that the safety is there, ensure that it's moved fully forward, because it has to move fully forward in order for the safety to reset. Thank you. Thank you, counsel. The case will be submitted. Thank you for the arguments, and counsel are excused. Thank you.